UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF TENNESSEE
AT KNOXVILLE

| | | |
|---|---|---|
| RICKY A. REYNOLDS, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | No. 3:16-CV-458-JRG-CCS |
| | ) | |
| NANCY A. BERRYHILL,[1] | ) | |
| Acting Commissioner of Social Security, | ) | |
| | ) | |
| Defendant. | ) | |

## REPORT AND RECOMMENDATION

This case is before the undersigned pursuant to 28 U.S.C. § 636(b), Rule 72(b) of the Federal Rules of Civil Procedure, and the Rules of this Court for a report and recommendation regarding disposition by the District Court of the Plaintiff's Judgment on the Pleadings and Memorandum in Support [Docs. 14 & 15] and the Defendant's Motion for Summary Judgment and Memorandum in Support [Docs. 16 & 17]. Ricky A. Reynolds ("the Plaintiff") seeks judicial review of the decision of the Administrative Law Judge ("the ALJ"), the final decision of the Defendant Nancy A. Berryhill, Acting Commissioner of Social Security ("the Commissioner"). For the reasons that follow, the Court will recommend that the Plaintiff's motion be denied and the Commissioner's motion be granted.

**I.  Procedural History**

On February 3, 2013, the Plaintiff filed an application for disability insurance benefits ("DIB"), claiming a period of disability which began May 1, 2011. [Tr. 158, 179-80]. After his

---

[1] During the pendency of this case, Nancy A. Berryhill replaced Acting Commissioner Carolyn W. Colvin. Pursuant to Federal Rule of Civil Procedure 25(d), Nancy A. Berryhill is substituted as the Defendant in this case.

application was denied initially and upon reconsideration, the Plaintiff requested a hearing. [Tr. 107]. On January 21, 2015, a hearing was held before the ALJ to review determination of the Plaintiff's claim. [Tr. 38-71]. On April 7, 2015, the ALJ found that the Plaintiff was not disabled. [Tr. 18-37]. The Appeals Council denied the Plaintiff's request for review [Tr. 1-6]; thus, the decision of the ALJ became the final decision of the Commissioner.

Having exhausted his administrative remedies, the Plaintiff filed a Complaint with this Court on July 21, 2016, seeking judicial review of the Commissioner's final decision under Section 405(g) of the Social Security Act. [Doc. 1]. The parties have filed competing dispositive motions, and this matter is now ripe for adjudication.

## II.     ALJ Findings

The ALJ made the following findings:

> 1. The claimant meets the insured status requirements of the Social Security Act through March 31, 2015.
>
> 2. The claimant has not engaged in substantial gainful activity since May 1, 2011, the alleged onset date (20 CFR 404.1571 *et seq*.).
>
> 3. The claimant has the following severe impairments: obesity, right shoulder disorder, obstructive sleep apnea, bilateral carpal tunnel syndrome, irritable bowel syndrome, asthma/breathing disorder, generalized anxiety disorder, post-traumatic stress disorder (PTSD), and depressive disorder (20 CFR 404.1520(c)).
>
> 4. The claimant does not have an impairment or combination of impairments that meets or medically equals the severity of one of the listed impairments in 20 CFR Part 404, Subpart P, Appendix 1 (20 CFR 404.1520(d), 404.1525 and 404.1526).
>
> 5. After careful consideration of the entire record, the undersigned finds that the claimant has the residual functional capacity to perform medium work as defined in 20 CFR 404.1567(c) except he can only frequently reach above the right (dominant) shoulder. He can frequently handle, finger and feel with both upper extremities. He should avoid concentrated exposure to pulmonary irritants. He

is limited to performing simple and detailed tasks, but not executive level tasks. He is limited to work that requires occasional interaction with coworkers and supervisors and no interaction with the general public. He is limited to work that requires infrequent changes in the work setting.

6. The claimant is unable to perform any past relevant work ( 20 CFR 404.1565).

7. The claimant was born on April 27, 1958, and was 53 years old, which is defined as an individual closely approaching advanced age, on the amended alleged disability onset date, and is now an individual of advanced age (20 CFR 404.1563).

8. The claimant has at least a high school education and is able to communicate in English (20 CFR 404.1564).

9. Transferability of job skills is not material to the determination of disability because using the Medical-Vocational Rules as a framework supports a finding that the claimant is "not disabled," whether or not the claimant has transferable job skills (See SSR 82-41 and 20 CFR Part 404, Subpart P, Appendix 2).

10. Considering the claimant's age, education, work experience, and residual functional capacity, there are jobs that exist in significant numbers in the national economy that the claimant can perform (20 CFR 404.1569 and 404.1569(a)).

11. The claimant has not been under a disability, as defined in the Social Security Act, from May 1, 2002, through the date of this decision (20 CFR 404.1520(g)).

[Tr. 23-33].

### III. Standard of Review

When reviewing the Commissioner's determination of whether an individual is disabled pursuant to 42 U.S.C. § 405(g), the Court is limited to determining whether the ALJ's decision was reached through application of the correct legal standards and in accordance with the procedure mandated by the regulations and rulings promulgated by the Commissioner, and whether the ALJ's findings are supported by substantial evidence. *Blakley v. Comm'r of Soc. Sec.*,

581 F.3d 399, 405 (6th Cir. 2009) (citation omitted); *Wilson v. Comm'r of Soc. Sec.*, 378 F.3d 541, 544 (6th Cir. 2004).

Substantial evidence is "more than a scintilla of evidence but less than a preponderance; it is such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Cutlip v. Sec'y of Health & Human Servs.*, 25 F.3d 284, 286 (6th Cir. 1994) (citations omitted). It is immaterial whether the record may also possess substantial evidence to support a different conclusion from that reached by the ALJ, or whether the reviewing judge may have decided the case differently. *Crisp v. Sec'y of Health & Human Servs.*, 790 F.2d 450, 453 n.4 (6th Cir. 1986). The substantial evidence standard is intended to create a "'zone of choice' within which the Commissioner can act, without the fear of court interference." *Buxton v. Halter*, 246 F.3d 762, 773 (6th Cir. 2001) (quoting *Mullen v. Bowen*, 800 F.2d 535, 545 (6th Cir. 1986)). Therefore, the Court will not "try the case *de novo*, nor resolve conflicts in the evidence, nor decide questions of credibility." *Garner v. Heckler*, 745 F.2d 383, 387 (6th Cir. 1984) (citation omitted).

On review, the plaintiff "bears the burden of proving his entitlement to benefits." *Boyes v. Sec'y. of Health & Human Servs.*, 46 F.3d 510, 512 (6th Cir. 1994) (citation omitted).

**IV.  Analysis**

This case involves an application for DIB. An individual qualifies for DIB if he or she: (1) is insured for DIB; (2) has not reached the age of retirement; (3) has filed an application for DIB; and (4) is disabled. 42 U.S.C. § 423(a)(1).

"Disability" is the "inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than twelve months." § 423(d)(1)(A); 20 C.F.R. § 404.1505(a). A claimant will only be considered disabled if:

4

> his physical or mental impairment or impairments are of such severity that he is not only unable to do his previous work but cannot, considering his age, education, and work experience, engage in any other kind of substantial gainful work which exists in the national economy, regardless of whether such work exists in the immediate area in which he lives, or whether a specific job vacancy exists for him, or whether he would be hired if he applied for work.

42 U.S.C. § 423(d)(2)(A); *see* 20 C.F.R. § 404.1505(a).

Disability is evaluated pursuant to a five-step analysis summarized as follows:

> 1. If claimant is doing substantial gainful activity, he is not disabled.
>
> 2. If claimant is not doing substantial gainful activity, his impairment must be severe before he can be found to be disabled.
>
> 3. If claimant is not doing substantial gainful activity and is suffering from a severe impairment that has lasted or is expected to last for a continuous period of at least twelve months, and his impairment meets or equals a listed impairment, claimant is presumed disabled without further inquiry.
>
> 4. If claimant's impairment does not prevent him from doing his past relevant work, he is not disabled.
>
> 5. Even if claimant's impairment does prevent him from doing his past relevant work, if other work exists in the national economy that accommodates his residual functional capacity ("RFC") and vocational factors (age, education, skills, etc.), he is not disabled.

*Walters v. Comm'r of Soc. Sec.*, 127 F.3d 525, 529 (6th Cir. 1997) (citing 20 C.F.R. § 404.1520). The claimant bears the burden of proof at the first four steps. *Id.* The burden shifts to the Commissioner at step five. *Id.* At the fifth step, the Commissioner must prove that there is work available in the national economy that the claimant could perform. *Her v. Comm'r of Soc. Sec.*, 203 F.3d 388, 391 (6th Cir. 1999) (citing *Bowen v. Yuckert*, 482 U.S. 137, 146 (1987)).

In the present case, the Plaintiff asserts that the ALJ committed three reversible errors. First, the Plaintiff argues that the ALJ improperly placed considerable deference on global

5

assessment of functioning ("GAF") scores in finding that the Plaintiff was not disabled. [Doc. 15 at 12-14]. Second, the Plaintiff contends that the ALJ failed to adequately consider the opinion of a license clinical social worker, Kelly Dickens. [*Id.* at 7-12]. Lastly, the Plaintiff maintains that new and material evidence exists that contradicts the ALJ's findings, thereby requiring a remand of this case so that the additional evidence can be considered. [*Id.* at 14-18]. The Court will address each alleged error in turn.

### A. GAF Scores

The Plaintiff contends that the ALJ's denial of benefits, in large part, was based upon improper reliance on the Plaintiff's GAF scores of record in violation of the agency's policy directive. [Doc. 15 at 13]. In support of this argument, the Plaintiff cites to an agency administrative message for the proposition "that GAF scores are, de facto, irrelevant, unreliable and immaterial to the issue of disability." [*Id.* at 13] (citing Soc. Sec. Admin., Global Assessment of Functioning (GAF) Evidence in Disability Adjudication, AM–13066 (July 22, 2013) REV (Oct. 14, 2014) (hereinafter "AM–13066"). The Plaintiff maintains that because AM-13066 was published almost two years prior to the ALJ's decision, "the ALJ was on notice or should have known that reliance on GAF scores in determining disability was no longer operative policy in the SSA." [*Id.*].

AM-13066 addresses many of the concerns that courts have become familiar with in adjudicating social security appeals where GAF scores, for better or for worse, are part of the ALJ's decision making process. Specifically, AM-13066 recognizes that "[t]he problem with using the GAF to evaluate disability is that there is no way to standardize measurement and evaluation." *Brannon v. Colvin*, 3:12–CV–00827, 2015 WL 4479708, at *4 (M.D. Tenn. July 21, 2015) (quoting AM–13066). Indeed, courts have routinely scrutinized reliance on GAF scores

6

where the scores are not accompanied by interruptive or supportive documentation by the assigning clinician. *See Oliver v. Comm'r of Soc. Sec.*, 415 F. App'x 681, 684 (6th Cir. 2011) ("A GAF score is thus not dispositive of anything in and of itself, but rather only significant to the extent that it elucidates an individual's underlying mental issues.") (citing *White v. Comm'r of Soc. Sec.*, 572 F.3d 272, 276 (6th Cir. 2009)); *Bryce v. Comm'r of Soc. Sec.*, No. 12–CV–14618, 2014 WL 1328277, at *10 (E.D. Mich. Mar. 28, 2014) ("Unless the clinician clearly explains the reasons behind his or her GAF rating, and the period to which the rating applies, it does not provide a reliable longitudinal picture of the claimant's mental functioning for a disability analysis.") (citation omitted); A*ckermann–Papp v. Comm'r of Soc. Sec.*, 1:06–CV–832, 2008 WL 314682, at *3 (W.D. Mich. Feb. 4, 2008) (finding that "a GAF score alone, without a sufficient accompanying interpretative and explanatory narrative, may admit of several different interpretations").

Another inherent problem is that "[s]ome clinicians give inflated or unrealistically low GAF ratings because the GAF rating instructions in the [Diagnostic and Statistical Manual of Mental Disorders, Fourth Edition, Text Revision] are unclear . . . [This] can lead to improper assessment of impairment severity." *Brannon*, 3:12–CV–00827, 2015 WL 4479708 at *4 (quoting AM–13066). It is no surprise, then, "that the publication of the Fifth Edition of the American Psychiatric Association, Diagnostic and Statistical Manual of Mental Disorders, eliminates the GAF rating for assessment of mental disorders." *Myers v. Comm'r of Soc. Sec.*, No. 1:14-CV-271-HSM-SKL, 2015 WL 9906165, at *6 n.3 (E.D. Tenn. Dec. 30, 2015), adopted sub nom., No. 1:14-CV-271, 2016 WL 297753 (E.D. Tenn. Jan. 22, 2016) (citing initial release of AM-13066 (July 22, 2013)).

Nonetheless, AM-13066 does not instruct adjudicators to ignore GAF scores in the context of disability determinations. To the contrary, GAF scores assigned by "acceptable medical

7

sources" are apparently now to be considered "medical opinions."[2] *Id.* GAF scores, however, are to be treated like any other piece of evidence in the case record in that unless a GAF score is well-supported and consistent with other record evidence it is entitled to little weight. *Johnson v. Colvin*, No. 3:12–CV–00443, 2015 WL 1839641, at *4 (M.D. Tenn. Apr. 21, 2015) (quoting AM-13066). Furthermore, a GAF score is not dispositive to the issue of whether an impairment is of listing level severity, nor can a GAF score by synonymous with a particular mental RFC. *Id.* Rather, the deference a GAF score deserves will depend on the score's supporting evidence. *Myers*, No. 1:14-CV-271-HSM-SKL, 2015 WL 9906165, at *6 (citing *Bryce*, 2014 WL 1328277, at *9).

Accordingly, the Court rejects the Plaintiff's representation that AM-13066 has made GAF scores obsolete in disability determinations. Neither Am-13066 nor case law in this circuit having opportunity to consider the administrative message supports the Plaintiff's position. The Court finds that GAF scores are still relevant to an ALJ's decision, but the scores are not case dispositive and the level of deference they are to receive will vary greatly depending on the assigning clinician's explanation and supporting documentation, as well as other evidence in the case record.

Moreover, the Court finds the ALJ did not place substantial reliance on GAF scores in assessing the Plaintiff's RFC or the denial of benefits as alleged by the Plaintiff. While the ALJ cited to GAF scores in summarizing the medical evidence of record [Tr. 28], the only emphasis the ALJ placed on them was in the context of weighing the opinion offered by Ms. Dickens [Tr. 31], which the Court will address more fully below. However, for purposes of the Plaintiff's

---

[2] An "acceptable medical source" is, generally, a licensed physician or psychologist. 20 C.F.R. § 404.1513(a). Only an "acceptable medical source" can offer a "medical opinion" which is a judgment about the nature and severity of a claimant's impairment. § 404.1527(a)(2). "Regardless of its source, we will evaluate every medical opinion we receive." § 404.1527(c).

8

specific contention that the ALJ primarily relied on GAF scores in assessing the Plaintiff's RFC, the Court observes that the ALJ made her RFC determination on the basis of the Plaintiff's testimony, other medical and objective evidence, opinions from nonexamining and examining state agency medical consultants as well as Ms. Dickens, the plaintiff's work history, the plaintiff's activities of daily living, and a disability rating from the Veterans Administration. [Tr. 26-31].

Accordingly, the Court finds the Plaintiff's interpretation of AM-13066, and his contention that GAF scores were a determinative factor in the denial of benefits, without merit.

### B. Opinion of Kelly Dickens, LCSW

The Plaintiff maintains that the ALJ did not properly weigh the opinion rendered by Plaintiff's treating mental health counsel, Ms. Dickens. [Doc. 15 at 7-11]. The Plaintiff suggests that the length and frequency of treatment favors giving more weight to Ms. Dickens's opinion than that assigned by the ALJ. [*Id.* at 8-10]. In addition, the Plaintiff argues that Ms. Dickens's opinion is consistent with the GAF scores she assigned the Plaintiff throughout the course of treatment. [*Id.* at 10-11].

Ms. Dickens has provided mental health counseling to the Plaintiff since January 6, 2010. [Tr. 895]. She completed a "Medical Source Statement (Mental)" on May 14, 2013, wherein she opined on the Plaintiff's ability to perform work-related activities. [Tr. 895-98]. Therein, Ms. Dickens stated that the Plaintiff suffered from chronic anxiety with difficulty functioning in social situations, had poor concentration, and suffered from depressed mood. [Tr. 895]. Ms. Dickens opined that the Plaintiff would be unable to maintain gainful employment because in the past two years, he has been released from duty due to an inability to manage his emotions. [*Id.*]. The Plaintiff's ability to perform different functions was rated by Ms. Dickens on a scale of "unlimited," "good," "fair," "poor," and "none." [Tr. 895]. Of relevance, "poor" is defined as

9

"Ability to function in this area is usually precluded." [*Id.*].

Ms. Dickens rated a number of functions "poor" on the Medical Source Statement, including the following: interacting appropriately, communicating effectively, and engaging in other aspects of social functioning; concentrating, persisting, and keeping pace; adapting to stressful circumstances in work or work-like settings; understanding, remembering, and carrying out complex instructions; relating predictably in social situations; dealing with the public; dealing with the stress of ordinary work; relating to supervisors or coworkers; working at a consistent pace for acceptable periods of time; and maintaining attention. [Tr. 895-97].

In the disability decision, the ALJ observed that Ms. Dickens had opined that the Plaintiff's ability to perform the foregoing activities was "poor" in that the Plaintiff would usually be precluded from performing such functions. [Tr. 30]. The ALJ assigned little weight to Ms. Dickens's Medical Source Statement, finding the functions that were assessed "poor" were inconsistent with the GAF scores assigned by Ms. Dickens, who mostly assessed GAF scores of 51 and above which indicated only "moderate symptoms or moderate difficulty" in functioning, Am. Psychiatric Ass'n, *Diagnostic and Statistical Manual of Mental Disorders* 34, 4th ed. (revised) 2000, and inconsistent with the treatment notes from the Plaintiff's treating psychiatrist, Dr. Presentation. [Tr. 31]. The ALJ cited to Dr. Presentation's treatment notes from October 2011 and April 2013 in which Dr. Presentation assessed GAF scores of 60, likewise indicating moderate symptoms. [Tr. 31] (citing [Tr. 613-16, 636]). During the later April 2013 office visit, Dr. Presentation noted that the Plaintiff experienced mild to no symptoms, including no irritability, and only mild limitations in concentration. [*Id.*] (citing [Tr. 613-14]). As a result, the GAF scores above 50 were given significant weight because "they are consistent with the narrative notes and clinical observations of" Ms. Dickens and Dr. Presentation "and are consistent with the

10

longitudinal evidence of record." [*Id.*].

As a licensed clinical social work, the pertinent regulation classifies Ms. Dickens as an "other source." "Other sources" include medical sources who are considered non-acceptable medical sources, *i.e.*, they are not licensed physicians or psychiatrists. 20 C.F.R. § 404.1513(a), -(d); *Cole v. Astrue*, 661 F.3d 931, 939 (6th Cir. 2011) (recognizing the plaintiff's mental health counsel as an "other source" under the regulations). While "other sources" may provide evidence as to the severity of a claimant's impairment as well as the effects the impairment has on the claimant's ability to work, § 404.1513(d), they "cannot establish the existence of a disability," *Engebrecht v. Comm'r of Soc. Sec.*, 572 F. App'x 392, 398 (6th Cir. 2014). Accordingly, opinions rendered by "other sources" are not subject to any special degree of deference. *Noto v. Comm'r of Soc. Sec.*, 632 F. App'x 243, 248-49 (6th Cir. 2015) ("The opinion of a 'non-acceptable medical source' is not entitled to any particular weight or deference—the ALJ has discretion to assign it any weight he feels appropriate based on the evidence of record.") (citations omitted).

Nonetheless, "other source" opinions may not be ignored. Social Security Ruling 06-03p requires ALJs to consider an "other source's" opinion and should generally explain the weight given to the opinion. 2006 WL 2329939, *6 (Aug. 9, 2006). The factors listed in 20 C.F.R. § 404.1527(c)(1)-(6), which are used for evaluating "medical opinions" from "acceptable medical sources," remain guiding principles for determining the weight an "other source" opinion deserves. *Id.* at *3. These factors include: the frequency of examination, the consistency of the opinion with other evidence, the amount of relevant evidence supporting the opinion, the source's area of expertise, and any other relevant factor that supports or refutes the opinion. *Id.* at *4-5. However, not every factor need be weighed. *Id.* at *5. The particular facts of each case will dictate which factors are appropriate for consideration in order to properly evaluate the opinion at hand. *Id.*

11

Turning to the instant case, the Court finds that substantial evidence supports the ALJ's assessment of Ms. Dickens's opinion. As a non-acceptable medical source, the ALJ was not required to provide a detailed assessment of Ms. Dicken's opinion. *See Engebrecht*, 572 F. App'x at 398 ("As an 'other source' opinion, Hastings' opinion is not entitled to controlling weight, nor is the ALJ required to give reasons for failing to assign it controlling weight, as that requirement only applies to treating sources.") (citing *Ealy v. Comm'r of Soc. Sec.*, 594 F.3d 504, 514 (6th Cir. 2010)). Nonetheless, the ALJ provide a reasonable basis for determining that the opinion was entitled to little weight. Specifically, the ALJ compared Ms. Dickens treatment notes and GAF scores with Dr. Presentation's treatment notes and GAF scores in concluding that Ms. Dickens' moderate GAF scores were supported by and consistent with other record evidence. *See Johnson*, 3:12–CV–00443, 2015 WL 1839641 at *4. Specifically, while Ms. Dickens generally assigned GAF scores between 53 and 60, indicating moderate symptoms [Tr. 618, 620, 622, 624-26, 628, 876, 891, 912), the ALJ concluded that other evidence in the record, namely Dr. Presentation's treatment of the Plaintiff, exhibited that the Plaintiff indeed experienced no more than moderate symptoms as Dr. Presentation assigned similar GAF scores and specifically observed that those scores, in functional terms, correlated to mild to no symptoms, including no irritability, memory was intact, thought content was normal, attention, concentration, and judgment was good, and only mild limitations in concentration. [Tr. 613-14, 616, 885, 887].

The Plaintiff suggests that the ALJ failed to note the length and frequency Ms. Dickens treated the Plaintiff, which was much more extensive than Dr. Presentation's treating relationship with the Plaintiff. However, the ALJ was not required to explicitly comment on these factors. *See* Soc. Sec. Rul. 06-03p, 2006 WL 2329939 at *4-5. Moreover, while the length and frequency of treatment are relevant factors to consider, the weight these factors will carry undoubtedly is

12

effected by the opinion's supportability and consistency with other record evidence. *See id.* at \*5. Here, the ALJ reasonably concluded that the "poor" functioning opined by Ms. Dickens was simply not supported by her treatment records or findings made by Dr. Presentation.

The Plaintiff further attempts to argue that the definition of "poor," as defined on the Medial Source Statement, is not necessarily inconsistent with the "moderate limitations" suggested by Ms. Dickens's GAF scores. [Doc. 15 at 10-11]. The Court disagrees. To reiterate, "poor" is defined as "Ability to function in this area is usually precluded." A "moderate limitation," on the other hand, although not defined by agency regulations or rulings, is generally defined as not precluding an activity. *See Cantrell v. McMahon*, 227 F. App'x 321, 322 (5th Cir. 2007) (upholding the definition of "moderate" as "there are some moderate limitations, but the person can still perform the task satisfactorily"); *Denham v. Comm'r of Soc. Sec.*, No. 2:15-CV-2425, 2016 WL 3639894, at \*7 (S.D. Ohio July 8, 2016) ("Equally clear is that in using the word 'moderate' to describe Plaintiff's level of impairment, the ALJ, like the state-agency consultants, defined the term as it is normally defined (*i.e.*, that a moderate limitation is not, of itself, work-preclusive)."), *adopted by*, No. 2:15-CV-2425, 2016 WL 4500713 (S.D. Ohio Aug. 29, 2016); *Ziggas v. Colvin*, No. 1:13-cv-87, 2014 WL 1814019, at \*6 (S.D. Ohio May 6, 2014) ("[C]ourts generally agree that although the Social Security regulations do not define a 'moderate limitation,' it is commonly defined on agency forms 'as meaning that the individual is still able to function satisfactorily.'") (quoting *Lacroix v. Barnhart*, 465 F.3d 881, 888 (8th Cir. 2006)). Therefore, the Court finds that a functioning ability of "poor" is more restrictive, and directly at odds with, a "moderate limitation."

Accordingly, the Court finds the ALJ did not err in assessing Ms. Dickens's opinion, and the Plaintiff's arguments are without merit.

C. New Evidence

The Plaintiff also argues that the ALJ failed to consider new and material evidence that was generated "mere weeks" after the Plaintiff's date last insured of March 31, 2015, and that such evidence would undoubtedly change the outcome of the case. [Doc. 15 at 14-18]. Specifically, the Plaintiff cites to imaging studies of his right shoulder that include an x-ray from July 15, 2015, demonstrating slowly increasing degree of osteopathic degenerative changes involving both acromioclavicular and glenohumeral joints, an x-ray from August 24, 2015, demonstrating type 2 AC joint arthritis, and an MRI from September 22, 2015, demonstrating rotator cuff disease and impingement, including advanced degenerative changes in the glenohumeral joint with the presence of chondromalacia and prominent subchondrawl degeneration. [*Id.* at 16] (citing [Tr. 1003-04, 1018]).

As an initial matter, the Court observes that "[i]n order to establish entitlement to disability insurance benefits, an individual must establish that he became 'disabled' prior to the expiration of his insured status." *Moon v. Sullivan*, 923 F.2d 1175, 1182 (6th Cir. 1990); *see* Soc. Sec. Rul. 83-20, 1983 WL 31249 at *3 (Jan. 1, 1983) ("A [T]itle II worker cannot be found disabled under the Act unless insured status is also met at a time when the evidence establishes the presence of a disabling condition(s)."). While the Plaintiff alleges that the ALJ erred in not considering this evidence, the Court notes that the evidence cited by the Plaintiff was not in existence at the time the ALJ conducted the administrative hearing on January 1, 2015, nor was it available prior to the ALJ's April 7, 2015 decision. The evidence was submitted, however, to the Appeals Council in connection to the Plaintiff's request that the Appeals Council review the ALJ's decision. [Tr. 1-6]. Thus, to the extent that the Plaintiff meant that the Appeals Council erred in declining review of the ALJ's decision in light of the new evidence, the Court notes that the Appeals Council will

14

only consider new and material evidence when "it relates to the period on or before the date of the [ALJ's] hearing decision." 20 C.F.R. § 404.970(b).

The Sixth Circuit Court of Appeals has made clear "that where the Appeals Council considers new evidence but declines to review a claimant's application for disability insurance benefits on the merits," as is the case here, a court "cannot consider that new evidence in deciding whether to uphold, modify, or reverse the ALJ's decision." *Cline v. Comm'r of Soc. Sec.*, 96 F.3d 146, 148 (6th Cir. 1996). A court can, however, "remand the case for further administrative proceedings in light of the evidence, if a claimant shows that the evidence is new and material, and that there was good cause for not presenting it in the prior proceeding." *Id.* (citation omitted). This is referred to as a "sentence six remand." *Sizemore v. Sec'y of Health & Human Servs.*, 865 F.2d 709, 711 (6th Cir. 1988). The proponent of the new evidence bears the burden of proving all three elements. *Longworth v. Comm'r of Soc. Sec.*, 402 F.3d 591, 589 (6th Cir. 2005).

Evidence is considered "new only if it was 'not in existence or available to the claimant at the time of the administrative proceeding.'" *Foster*, 279 F.3d at 357 (quoting *Sullivan v. Finkelstein*, 496 U.S. 617, 626 (1990)). "New evidence must indeed be new; it cannot be cumulative of evidence already in the record." *Pickard v. Comm'r of Soc. Sec.*, 224 F. Supp. 2d 1161, 1171 (W.D. Tenn. 2002) (quoting *Elliott v. Apfel*, 28 F. App'x 420, 424 (6th Cir. 2002)). "Material evidence" exists if there is a "reasonable probability that the Secretary would have reached a different disposition of the disability claim if presented with the new evidence." *Foster*, 279 F.3d at 357 (quoting *Sizemore*, 865 F.2d at 711). Moreover, "[e]vidence is material if it is probative of the claimant's condition during the time period at issue before the ALJ." *Pickard*, 224 F. Supp. 2d at 1171. Finally, "good cause" is shown "by demonstrating a reasonable justification for the failure to acquire and present the evidence for inclusion in the hearing before

the ALJ." *Foster*, 279 F.3d at 357. "The mere fact that the evidence at issue was not in existence at the time of the ALJ's decision does not establish good cause." *Pickard*, 224 F. Supp. 2d at 1171.

The Plaintiff argues that because the evidence before the ALJ already established a right shoulder disorder and the new imaging studies occurred "mere weeks" after the expiration of the Plaintiff's date last insured, it can reasonably be inferred that the condition of the Plaintiff's right shoulder, as exhibited by the new imaging studies, existed prior to the date last insured. [*See* Doc. 15 at 15]. The Court is not persuaded. First, the post-dated imaging studies did not occur "mere weeks" after the ALJ rendered her April 7, 2015 decision. To the contrary, the imaging studies occurred between three and six months thereafter. Post-dated evidence is immaterial unless it relates back to the period under review. *See Pickard*, 224 F. Supp. 2d at 1171; *Strong v. Comm'r of Soc. Sec.*, 88 F. App'x 841, 845 (6th Cir. 2004) ("Evidence of disability obtained after the expiration of insured status is generally of little probative value."). The Plaintiff has not cited to any evidence that the clinical impressions documented by the post-dated imaging studies relate back to the period under review. The fact that the Plaintiff already had a right shoulder impairment, in and of itself, is immaterial.

Second, the Plaintiff has only provided conclusory assertions that the imaging studies are inconsistent with the requirements of medium work and would undoubtedly change the outcome of the case. "[D]isability is determined by the functional limitations imposed by a condition, not the mere diagnosis of it." *Hill v. Comm'r of Soc. Sec.*, 560 F. App'x 547, 551 (6th Cir. 2014). The Plaintiff has not cited to any treatment records, medical opinions, or other evidence that demonstrate the functional effects, if any, upon his right shoulder given these latter imaging studies.

Moreover, to the extent that the new evidence demonstrates a deterioration of the Plaintiff's

16

right shoulder that has caused additional functional limitations, the proper remedy would be for the Plaintiff to file a new claim for benefits addressing this later time period. *See Wyatt v. Sec'y of Health & Human Servs.*, 974 F.2d 680, 685 (6th Cir. 1992) ("Evidence of a subsequent deterioration or change in condition after the administrative hearing is deemed immaterial.") (citing *Sizemore*, 865 F.2d at 712).

Accordingly, the Court finds that the post-dated evidence is not material, and the Plaintiff's arguments to the contrary are not well-taken.

## V. CONCLUSION

Based upon the foregoing, it is hereby **RECOMMENDED**[3] that the Plaintiff's Motion for Judgment on the Pleadings [**Doc. 14**] be **DENIED**, and the Commissioner's Motion for Summary Judgment [**Doc. 16**] be **GRANTED**.

                                        Respectfully submitted,

                                           s/ C. Clifford Shirley, Jr.
                                           United States Magistrate Judge

---

[3] Any objections to this Report and Recommendation must be served and filed within fourteen (14) days after service of a copy of this recommended disposition on the objecting party. Fed. R. Civ. P. 72(b)(2). Such objections must conform to the requirements of Federal Rule of Civil Procedure 72(b). Failure to file objections within the time specified waives the right to appeal the District Court's order. *Thomas v. Arn*, 474 U.S. 140, 153-54 (1985). "[T]he district court need not provide *de novo* review where objections [to the Report and Recommendation] are '[f]rivolous, conclusive or general.'" *Mira v. Marshall*, 806 F.2d 636, 637 (6th Cir. 1986) (quoting *Nettles v. Wainwright*, 677 F.2d 404, 410 n.8 (5th Cir.1982)). Only specific objections are reserved for appellate review. *Smith v. Detroit Federation of Teachers*, 829 F.2d 1370, 1373 (6th Cir. 1987).